[No. 35271-7-I.   Division One.   August 7, 1995.]

MONICA FISHER, *Appellant*, v. ALDI TIRE, INC., ET AL., *Defendants*, STATE FARM MUTUAL FIRE AND AUTO INSURANCE COMPANY, *Respondent*.

*Patrick H. LePley*, for appellant.

*Michael J. Gainer* and *Harold C. Fosso*, for respondent.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae.

COLEMAN, J. — In this case we are asked to decide whether a provision in an automobile insurance policy which defines the insurer's responsibility for expenses incurred in recovering subrogated amounts overrides the test developed in equity for when attorney fees must be

shared by the insurer. On the record before us, we find that the contract provision controls to the exclusion of the common law standard. Because interpretation of the provision requires further factual inquiry, however, we reverse the order of summary of judgment.

After the vehicle she was driving was rear-ended in December 1991, Monica Fisher received $12,224 under her personal injury protection (PIP) coverage from State Farm. When Fisher applied for PIP benefits, State Farm notified her that "[a]ll First Party Benefit payments we make to or for you are subject to State Farm's right of reimbursement. If you should recover our interest from the responsible party or [his] insurance carrier, you must protect our reimbursement rights."[1] Fisher retained an attorney under a contingent fee agreement and filed a lawsuit against the alleged tortfeasors. The defendants, who were insured by Federated Service Insurance Company, contested liability for the accident.

After extensive discovery, Federated offered to settle with Fisher based on the assumption that a jury would

---

[1] The PIP provision covering amounts paid to an insured that are subsequently recovered from the tortfeasor or its insurance carrier provides in relevant part:

**3. Our Right to Recover Our Payments**

. . . .

b. Under personal injury protection and underinsured motor vehicle coverages, we are subrogated to the extent of our payments to the proceeds of any settlement the injured **person** recovers from any party liable for the **bodily injury** or **property damage.**

   If the **person** to or for whom we have made payment has not recovered our payment from the party at fault, he or she shall:

   (1) keep these rights in trust for us and do nothing to impair them[.]

. . . .

d. If the **insured** recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. Our share is that per cent of the legal expenses that the amount we recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement.

Our right to recover our payments applies only after the **insured** has been fully compensated for the **bodily injury, property damage** or **loss.**

find her thirty percent responsible for the accident. Fisher rejected that offer by filing a motion for summary judgment regarding liability. The parties subsequently stipulated that the driver who rear-ended Fisher was negligent, that his negligence was the proximate cause of the accident, and that Fisher was neither contributorily nor comparatively negligent. Fisher's attorney notified State Farm, which was not a party to the suit, of an anticipated settlement and requested that State Farm reduce its subrogation claim by one-third as its share of attorney fees. State Farm responded that it would collect its subrogation interest directly from Federated.

State Farm and Federated are parties to an agreement for inter-company arbitration of disputes regarding PIP claims. After the accident, State Farm notified Federated of its subrogation right in payments made to Fisher and updated that information as additional benefits were paid. On August 3, 1993, several months before the parties to the personal injury action established liability, State Farm offered to explore settlement of the subrogation claim with Federated. Federated replied eight months later, on the day before liability was established, telling State Farm that if settlement occurred in the tort action as Federated anticipated, it would send the subrogated funds to State Farm through Fisher's attorney. Before the parties to the tort action finalized their settlement on April 28, 1994, State Farm initiated inter-company arbitration with Federated.

Federated and Fisher's settlement included State Farm's subrogation interest. The subrogated funds were paid into the registry of the court pending resolution of the dispute over attorney fees. Fisher filed a complaint in interpleader against State Farm (1) asking that the insurer pay a pro rata share of attorney fees and costs and (2) seeking damages for the insurer's alleged breach of contract and bad faith refusal to share legal expenses. Both parties moved for summary judgment. The trial court denied Fisher's motion, granted State Farm's motion, and ordered the subrogated funds released to State Farm.

■ We review a summary judgment by engaging in the same inquiry as the trial court. To merit summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law and that there are no genuine issues of material fact. CR 56(c). A defendant may move for summary judgment by either (1) pointing out the absence of competent evidence to support the plaintiff's case or (2) establishing through affidavits that no genuine issue of material fact exists. *Guile v. Ballard Community Hosp.*, 70 Wn. App. 18, 27, 851 P.2d 689, *review denied*, 112 Wn.2d 1010 (1993).

We first address whether the common law test for determining when an insurer must share attorney fees for recovering subrogated funds applies when the insurance policy incorporates a different test. An insurance company's right to subrogation can arise in two ways, by operation of law or by contract. Developed in the absence of contractual agreement, legal subrogation (also referred to as equitable subrogation) applies to prevent unjust enrichment of the insured when an insurer fulfills its obligation pursuant to an insurance policy and the insured recovers that amount from the tortfeasor. Conventional, or contractual, subrogation is created by agreement of the parties. Elaine M. Rinaldi, *Apportionment of Recovery Between Insured and Insurer in a Subrogation Case*, 29 Tort & Ins. L. J. 803, 804 (1994); Mark S. Rhodes, *Couch: Cyclopedia of Insurance Law*, § 61:2 (2d ed. 1983).

The insurance policy at issue here creates a contractual right to subrogation that parallels the equitable right. The policy further provides that the insurer will share responsibility for attorney fees and costs incurred in recovering subrogated funds, but only in certain situations.

> If the **insured** recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. Our share is that per cent of the legal expenses that the amount we recover bears to the total recovery. *This does not apply to any amounts recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement.*

(Italics ours.) Thus, under this provision, State Farm will not share attorney fees for any sum that it is able to recover through inter-company arbitration.

In the absence of policy language addressing attorney fees, the courts developed a different standard for determining when an insurer must share the expense of recovering subrogated funds. Under the common law rule, "an insurer who makes a recovery from a third party for moneys paid its insured is only required to pay attorney fees which were 'reasonably and necessarily incurred' to make the recovery. Absent an agreement to the contrary, an insurer is only obligated for attorney fees if it is benefited." *Pena v. Thorington*, 23 Wn. App. 277, 281, 595 P.2d 61, *review denied*, 92 Wn.2d 1019 (1979) (quoting *Ridenour v. Nationwide Mut. Ins. Co.*, 273 Or. 514, 516, 541 P.2d 1377 (1975)). Relating this common law standard to policy language essentially identical to the provision at issue here, Division Three of the Court of Appeals concluded that the contract constitutes an "agreement to the contrary" and, as such, replaces the common law inquiry into the necessity or benefit of an attorney's services. *Richter, Wimberley & Ericson v. Honore*, 29 Wn. App. 507, 510-11, 628 P.2d 1311 (1980), *review denied*, 95 Wn.2d 1012 (1981). *See also Desmond v. Liberty Northwest Ins. Corp.*, 63 Wn. App. 81, 88, 817 P.2d 872 (1991) (Forrest, J., concurring). Thus, under *Honore*, an insurance contract is determinative when it expressly defines the circumstances in which attorney fees will be shared.

Fisher and amicus[2] assert that an insured's attorney benefits a PIP insurer by establishing the tortfeasor's liability, whenever it is initially contested, notwithstanding the existence of an arbitration agreement between the insurance carriers. Fisher and amicus contend that, in this situation, PIP insurers generally delay initiating arbitration until liability is established in a personal injury action and rely on that determination to enforce their subrogation rights. The common law benefit test is

---

[2]The Washington State Trial Lawyers Association submitted an amicus brief.

therefore necessary, they argue, to compel insurers to bear costs corresponding to the benefit they receive. Application of equitable principles is particularly appropriate, Fisher asserts, when, as occurred here, the insured is advised to protect the insurer's reimbursement rights without also being told that the insurer intends to pursue its subrogation interest through inter-company arbitration.

In support of her argument, Fisher points to cases in which the courts have applied equitable subrogation principles to limit the scope of contractual subrogation rights. *See, e.g., Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 417, 693 P.2d 697 (1985) (holding, in different context, that contractual subrogation claim is subject to equitable defenses); *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978) (insurer may pursue subrogation interest only if insured is made whole by recovery). These cases differ from the present situation, however, in that the insurance policies at issue there did not define the scope of the subrogation rights they created. Here, in contrast, the policy expressly limits the circumstances in which the insurer will assume responsibility for a portion of attorney fees.

■ The crucial question, therefore, is whether parties to an insurance contract may agree to subrogation standards that deviate from, and thereby supplant, those developed at common law. We find that they may. "The right to subrogation as it would otherwise arise from the equities existing between the parties may be modified or extinguished by agreement." (Footnote omitted.) 73 Am. Jur. 2d. *Subrogation* § 8 (1980). *See also Kish v. Insurance Co. of North Am.*, 125 Wn.2d 164, 172, 883 P.2d 308 (1994) (insurance contract embodies reasonable expectations and intent of the parties); *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 341-42, 831 P.2d 724 (1992) (parties to a construction contract may waive their subrogation rights); *Pena*, 23 Wn. App. at 282 ("If the insurer decides to pursue its subrogation claim

on its own, it should have the right to do so."); *Thiringer*, 91 Wn.2d. at 220 (court applied equitable principles only after not finding anything in language of policy to indicate parties had agreed a different principle would apply).

Finding the insurance contract controlling, however, does not conclude our analysis. For summary judgment to be proper, State Farm must demonstrate that the contract is clear and unambiguous. The policy states that State Farm will share responsibility for attorney fees incurred to recover subrogated amounts unless the subrogation interest was "recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement." Because State Farm did not recover the funds at issue through arbitration, our attention focuses on the term "recoverable." We do not agree with State Farm that this term simply refers to whether the insurers have entered into an arbitration agreement. Instead, the language of the provision speaks in terms of a factual inquiry. Arbitration, by definition, presupposes a controversy requiring resolution. In general, when recovery is sought through arbitration, it can be assumed that the amount is contested. When liability and other controverted issues are determined in the underlying tort claim, nothing remains unsettled and, therefore, dispute-resolution is unnecessary. In that case, inter-company arbitration between insurers would simply operate as a clearinghouse for predetermined disputes and could be used to avoid payment of attorney fees even though the insurer would be sharing in the recovery.

Thus, in the present circumstances, if inter-company arbitration works merely as a rubber stamp of personal injury litigation, subrogated funds are not, in reality, recoverable through inter-company arbitration. If arbitration is not the vehicle that provides the recovery, the limitation in the insurance policy would not apply and State Farm would be obligated to share responsibility for attorney fees as set forth in the policy. In light of the need for further factual inquiry, therefore, summary judgment

was not proper on the issue of whether the policy required State Farm to pay a part of the legal expenses.[3]

Regarding the second claim asserted by Fisher, we agree with State Farm that the evidence does not support Fisher's allegation that State Farm acted in bad faith. Accordingly, summary judgment on this issue was proper. Fisher's request for attorney fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991) is premature because, at this point, it has merely been established that further proceedings are needed to resolve questions of fact.

The order of summary judgment is affirmed in part and reversed in part.

BECKER and ELLINGTON, JJ., concur.

Reconsideration denied September 20, 1995.

Review denied at 128 Wn.2d 1025 (1996).

---

[3]Amicus and Fisher raise additional issues in connection with the workings of inter-company arbitration that we do not address. As reflected in our disposition, the record before us is minimal and simply does not allow careful analysis of the mechanics of the arbitration procedure at issue.