[No. 16945-6-III.　　Division Three.　　January 12, 1999.]

Avis Harwood, *Appellant*, v. Group Health Northwest, *Respondent*.

*David E. Michaud* and *Lawrence W. Garvin* of *Lee & Michaud*, for appellant.

*Thomas R. Luciani* and *Michael H. Church*, for respondent.

Kurtz, A.C.J. — After Avis Harwood was injured in an automobile accident, her insurer, Group Health Northwest, paid for her medical treatment. Ms. Harwood was represented by an attorney who obtained a recovery from the at-fault driver's insurer. Group Health claimed a subrogation interest in the recovery pursuant to its insurance contract with Ms. Harwood, but refused to pay a pro rata share of her attorney fees. The court granted summary judgment to Group Health. Ms. Harwood appeals contending the court erred in holding that the terms of the insurance contract required her to present evidence that her counsel provided legal services that benefited Group Health before Group Health was obligated to pay a share of the legal expenses.

The Group Health insurance policy obligates the insurer to pay "an equitable apportionment" of legal expenses when "reasonable legal fees" have been incurred to recover

the insured's medical expenses. The trial court interpreted this language to mean that the work of the attorneys must benefit Group Health before the insurer was obligated to share the cost of the legal work. We disagree with this interpretation of the contract, reverse the summary judgment and remand the matter to the trial court.

## FACTS

On November 26, 1994, Avis Harwood was injured in an automobile accident. Group Health paid medical expenses in the amount of $8,788.90 on behalf of Ms. Harwood for the injuries she sustained in this collision. Ms. Harwood's attorneys represented her in a claim against the third party driver who was insured by North Pacific Insurance Company. Group Health claimed a subrogation interest for the medical expenses it paid pursuant to the terms of its medical coverage agreement with Ms. Harwood which states as follows:

SECTION VI. SUBROGATION

"Injured person" under this section means an Enrollee covered by this Agreement who sustains compensable injury. "GHNWs medical expense" means the expense incurred by GHNW for the care or treatment of the injury sustained, computed in accordance with prevailing rates.

If the injured person was injured by an act or omission of a third party giving rise to a claim of legal liability against the third party, GHNW shall have the right, and is required under Medicare regulations, to recover its cost of providing Benefits to the injured person (right of subrogation) from the third party. GHNW shall be subrogated to and may enforce all rights of the injured person to the extent of its medical expense. Full compensation shall be measured on an objective, case-by-case basis, but is subject to a presumption that a settlement which does not exhaust the third party's reachable assets is full compensation to the injured person.

The injured person, or the injured person's representative, must cooperate fully with GHNW in effecting collection from

persons causing the injury. All sums collected from the third party for such injury, whether by legal action or settlement, shall be deemed to include GHNW's medical expense, whether or not paid specifically for medical expense or with or without admission of liability for the injury. If settlement is made or judgment satisfied without provision for payment to GHNW of such amount, the Enrollee shall be liable to GHNW therefore only up to the amount of the settlement including legal fees and beneficiary coinsurance cost. The Enrollee agrees to furnish any further assignment which, in the judgment of GHNW, may be necessary to enforce such subrogation or to protect the rights of GHNW hereunder. These provisions are applicable for periods of coverage even if the Enrollee subsequently terminates enrollment.

*When reasonable legal fees have been incurred to recover GH-NW's medical expense, whether incurred in an action for damages or otherwise, and where there is recovery in GHNW's behalf, there shall be an equitable apportionment of such legal expenses.* This provision does not apply to occupationally incurred diseases, sickness and/or injury.

(Emphasis added.)

Group Health notified Ms. Harwood's attorneys that Group Health did not retain their services and that it would pursue recovery on its own for the accident-related medical expenses paid by Group Health. At that time, Group Health created its own claim file and pursued recovery of its subrogated interest with North Pacific by notifying North Pacific of its subrogation claim.

Ms. Harwood's attorneys negotiated directly with North Pacific Insurance to settle her personal injury claim. Ms. Harwood's attorneys ordered her medical records from her health care providers, including Group Health. All of these health care providers, including Group Health, charged Ms. Harwood for copies of her medical records. Group Health did not share in any of these expenses. North Pacific Insurance requested, among other information, that Ms. Harwood's attorneys provide her medical records from a previous automobile accident which occurred in May 1994, in order to distinguish the injuries sustained in the November 1994 automobile collision.

Ms. Harwood settled her claim against North Pacific Insurance Company for $30,000. This settlement included the $8,788.90 paid by Group Health for medical expenses. Group Health refused to waive any portion of its subrogation claim despite having done so under the same policy after Ms. Harwood's May 1994 automobile accident. As a result, Ms. Harwood's attorneys held the disputed funds in their trust account pending the resolution of the dispute.

Group Health filed a lawsuit against Ms. Harwood's attorneys in Spokane County District Court for conversion. Ms. Harwood was not named as a party in the lawsuit filed in district court. Ms. Harwood placed the entire $8,788.90 in the superior court registry. Ms. Harwood then filed a complaint for damages against Group Health for bad faith, breach of contract, and violation of the Consumer Protection Act.

Group Health subsequently moved for summary judgment. Group Health argued that its agreement paralleled the common law "benefit" test, such that in order for the agreement to apply, and for it to reduce its subrogation interest, Ms. Harwood must first show that: (1) The actions of her attorneys were necessary in recovering the subrogation; (2) The actions of Ms. Harwood's attorneys in recovering the subrogation benefited Group Health; and (3) Liability, causation, and damages were disputed by the third-party carrier before the agreement applied to apportion any disputed funds. The trial court granted Group Health's motion for summary judgment. The trial court held that Group Health's interpretation of the agreement was correct, that Ms. Harwood had not shown that her attorneys' actions benefited Group Health, and that Group Health was entitled to all of the claimed subrogation as a matter of law. Thereafter, the trial court denied Ms. Harwood's motion for reconsideration.

Ms. Harwood appeals.

## ANALYSIS

When reviewing an order of summary judgment, an

appellate court engages in the same inquiry as the trial court. *In re Estates of Hibbard,* 118 Wn.2d 737, 744, 826 P.2d 690 (1992). A trial court may grant summary judgment only if, after viewing the pleadings and record and drawing all reasonable inferences in favor of the nonmoving party, it finds there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Higgins v. Stafford,* 123 Wn.2d 160, 168-69, 866 P.2d 31 (1994). The interpretation of an insurance policy is a question of law, so the trial court's interpretation of an insurance policy is subject to de novo review on appeal. *Waters v. Farmers Ins. Co.,* 83 Wn. App. 653, 656, 924 P.2d 37 (1996). Thus, this court should independently review the medical coverage agreement and determine whether the trial court's decision was correct.

■ A court must enforce the contract as written if the language in the contract is clear and unambiguous. *Washington Pub. Util. Dists.' Utils. Sys. v. Public Util. Dist. No. 1,* 112 Wn.2d 1, 10, 771 P.2d 701 (1989). The relevant portion of the medical coverage agreement states as follows:

> When reasonable legal fees have been incurred to recover GH-NW's medical expense, whether incurred in an action for damages or otherwise, and where there is recovery in GHNW's behalf, there shall be an equitable apportionment of such legal expenses.

Ms. Harwood believes this language requires Group Health to pay a portion of the attorney fees if her attorneys recovered Group Health's subrogation amount for medical expenses. Group Health believes this language means it need pay only a portion of the attorney fees if Ms. Harwood can show that her attorneys' actions benefited Group Health.

The court agreed with Group Health stating as follows:

> The Defendant's interpretation of the contract provision in question is correct, and Plaintiff has not presented any evidence to support her contention that her counsel provided

legal services to recover the Defendant's medical expenses incurred on her behalf.

This decision follows the common law rule which was developed to determine when an insurer must share the expenses of recovering subrogated funds. Under the common law rule, "an insurer who makes a recovery from a third party for moneys paid its insured is only required to pay attorney fees which were 'reasonably and necessarily incurred' to make the recovery. Absent an agreement to the contrary, an insurer is only obligated for attorney fees if it is benefited." *Pena v. Thorington*, 23 Wn. App. 277, 281, 595 P.2d 61, *review denied*, 92 Wn.2d 1019 (1979) (quoting *Ridenour v. Nationwide Mut. Ins. Co.*, 273 Or. 514, 516, 541 P.2d 1377 (1975)).

■ However, this rule is applied only in the absence of policy language addressing attorney fees. Here, the parties contracted to equitably apportion legal expenses "[w]hen reasonable legal fees have been incurred to recover GH-NW's medical expense."

Similar language has been discussed in cases involving automobile insurance where the policy requires the automobile insurer to pay a pro rata share of attorney fees and costs for subrogation of personal injury protection (PIP) benefits. This court previously concluded that policy language requiring an insurer to share the expense of recovering subrogated funds, constitutes an "agreement to the contrary" and, as such, replaces the common law inquiry into the necessity or benefit of an attorney's services. *Richter, Wimberley & Ericson, P.S. v. Honore*, 29 Wn. App. 507, 510-11, 628 P.2d 1311 (1980), *review denied*, 95 Wn.2d 1012 (1981).

In the very recent case, *Mahler v. Szucs*, 135 Wn.2d 398, 957 P.2d 632, 966 P.2d 305 (1998), the court discussed State Farm's policy language dealing with the recovery of PIP payments and the sharing of expenses. The relevant language of the policy stated:

"If the insured recovers from the party at fault and we share

in the recovery, we will pay our share of the legal expenses. Our share is that percent of the legal expenses that the amount we recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement."

*Mahler*, 135 Wn.2d at 419. The court concluded that an insurer may establish its rights to subrogation and the mechanism for its enforcement by its contract with the insured. The court held that under the language of the State Farm policy on sharing of expenses, State Farm must share in the expense its insured incurred to recover State Farm's PIP payments from the tortfeasors.

The language of Ms. Harwood's policy differs somewhat from the State Farm policy in that Ms. Harwood's policy requires that "reasonable legal fees" be incurred to recover Group Health's medical expenses. This could be interpreted, as the trial court did, to mean it must be shown that the work of the attorneys benefited Group Health. However, the better rule is that if an insurance company contracts with an insured to have a subrogation right to any recovery the insured makes against a third party, and that contract included language requiring the insurer to share the expense of recovery, the insurer should have to help pay attorney fees for the legal work done to make that recovery. No benefit to the insurer needs to be shown.

The matter shall be remanded to the trial court. The trial court is directed to apply the language of the contract and specifically to determine whether "reasonable legal fees" have been incurred to recover GHNW's medical expense and, if so, to make an equitable apportionment of such legal expenses.

Group Health further contends that Ms. Harwood's improper retention of Group Health's subrogation interests forfeits her right to demand a reduction for attorney fees. Group Health argues that only one-third of the subrogation amount was in dispute, yet Ms. Harwood retained the full subrogation amount. According to Group Health, this constitutes unclean hands and, for that reason, she cannot be granted relief in equity.

Ms. Harwood held the entire subrogation amount in an attorney's trust account while negotiating with Group Health. When Group Health filed a lawsuit, Ms. Harwood placed the subrogation amount in the superior court registry. There is legal support for this procedure when there is a dispute over what, if any, part of the subrogation amount will be attorney fees. *Desmond v. Liberty N.W. Ins. Corp.*, 63 Wn. App. 81, 83-84, 817 P.2d 872 (1991); *Richter, Wimberley*, 29 Wn. App. at 509; *Pena*, 23 Wn. App. at 279. We do not agree with Group Health's contention that Ms. Harwood's conduct disqualifies her for equitable relief.

■ Ms. Harwood asks for an award of attorney fees on appeal pursuant to RAP 18.1(a) because she was forced to litigate an issue of coverage under the terms of the agreement. In *Mahler*, 135 Wn.2d at 432, the court determined that Mahler was not entitled to attorney fees on appeal because it was not a coverage dispute, but rather a dispute over the value of State Farm's subrogation interest. Likewise, Ms. Harwood is not entitled to attorney fees on appeal.

The judgment is reversed and the matter is remanded to the trial court.

BROWN J., concurs.

SWEENEY, J. (concurring) — I concur with the result reached by the majority. But I disagree with the statement that "[n]o benefit to the insurer needs to be shown." Majority at 576. I think the attorney claiming a fee must show some benefit to the insurer. *United Pac. Ins. Co. v. Boyd*, 34 Wn. App. 372, 377, 661 P.2d 987 (1983); *State Farm Mut. Auto. Ins. Co. v. Lou*, 36 Wn. App. 838, 843, 678 P.2d 339 (1984); *Richter, Wimberley & Ericson v. Honore*, 29 Wn. App. 507, 510, 628 P.2d 1311 (1980), *review denied*, 95 Wn.2d 1012 (1981). *See also Mahler v. Szucs*, 135 Wn.2d 398, 427, 957 P.2d 632, 966 P.2d 305 (1998) (emphasizing the need for a showing of a benefit). And in a typical subrogation claim the attorney confers a benefit.

As a necessary and incidental part of prosecuting a personal injury claim, the plaintiff will always take the necessary steps to recover medical expenses which have been reasonably and necessarily incurred as a result of the accident (injury). Both the primary claim and the subrogation interest necessarily require resolution of the same questions, problems and disputes. Is the defendant liable? Did the plaintiff contribute to her own injuries? Is she injured at all? Are the injuries related to this accident? *Mahler*, 135 Wn.2d at 425-26 (it would be unrealistic and unfair for injured party not to seek medical payments and lost wages, both of which are included in personal injury protection payments).

So it seems to me contrary to the common law rule of subrogation, and unfair, to allow the insurance carrier to stand by, reap the benefits of the plaintiff's efforts in resolving these issues and then refuse to pay a proportionate share of the fees for those efforts. This is so even though arguably the plaintiff did nothing to "directly" benefit the insurance company—the plaintiff attorney's work necessarily benefits the company.

The record here is less than adequate. Avis Harwood's attorneys could have, and should have, made a better record of their efforts to prosecute these claims. But that aside, it is clear the attorneys represented Ms. Harwood. That representation resulted in a recovery for injuries sustained, including her related medical expenses. And that recovery necessarily benefited Group Health Northwest.