[No. 13779-1-III.   Division Three.   July 11, 1995.]

KATHRYN A. MAGULA, *Appellant*, v. BENTON FRANKLIN TITLE INSURANCE COMPANY, *Respondent*.

*Edward F. Shea, Edward F. Shea, Jr.,* and *Shea & Kuffel,* for appellant.

*Philip M. Raekes* and *Rettig, Osborne, Forgette,* for respondent.

MUNSON, J. — Kathryn Magula appeals the summary judgment dismissing her claim against Benton Franklin Title Insurance Company (BFT) for wrongful termination.

Ms. Magula was the head of the escrow department at BFT. In the fall of 1991, she became aware of tension in the office and apparent animosity of other employees toward her. She asked one of the employees, Linda Hendler, to have lunch with her on November 20. During the lunch, she asked Ms. Hendler what the problem was. Ms. Hendler told Ms. Magula other employees blamed Ms. Magula and her husband Pat Magula for the firing of a former employee, Amy Airoldi. Ms. Hendler also indicated Mr. Magula engaged in inappropriate sexual relationships with other BFT employees.

Mr. Magula was an independent contractor who provided janitorial services for the building in which BFT's offices are located. Greg Bowers was responsible for the

selection and employment of Mr. Magula's services. Mr. Bowers was also Ms. Magula's supervisor at BFT.

Following her lunch with Ms. Hendler, Ms. Magula told Mr. Bowers about the substance of their conversation. That evening, Ms. Hendler told Mr. Bowers several friends had told her someone was making slanderous statements about her and she believed that person was Mr. Magula. The next day, Ms. Hendler reported to Mr. Bowers that Mr. Magula had made a threatening phone call to her home and had followed her to her children's school. Mr. Bowers told the Magulas and Ms. Hendler that if they could not put this entire situation behind them and do their jobs at BFT he would terminate their employment.

On December 9, Ms. Hendler told Mr. Bowers she had received harassing telephone calls over the weekend and believed Mr. Magula was the person making those calls. Perceiving that the situation was continuing to cause disruption at BFT, Mr. Bowers discharged Ms. Magula and Ms. Hendler and terminated Mr. Magula's services. Mr. Bowers agrees there was no misconduct by Ms. Magula. Ms. Magula commenced this action alleging she was wrongfully terminated.

The trial court expressly noted there was no evidence of any misconduct on Ms. Magula's part, but dismissed her wrongful discharge claims on the basis her employment contract was terminable at will. She appeals.

Ms. Magula contends her discharge was unlawful because it violates RCW 49.60.180.

The general rule in Washington is that the employment relationship is terminable at will by the employer or employee. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984). An action for wrongful discharge may be maintained, however, if the discharge of an employee violates a clear mandate of public policy. *Thompson*, 102 Wn.2d at 232. "It is an unfair practice for any employer . . . (2) To discharge or bar any person from employment because of . . . marital status . . . ." RCW 49.60.180.

■ The term "marital status" is included in many states' human rights acts. Some courts have construed the term narrowly as referring solely to the status of the employee while others have construed it more broadly to encompass consideration of the identity or situation of the employee's spouse. *Cybyske v. Independent Sch. Dist. 196*, 347 N.W.2d 256, 259-60 (Minn.), *cert. denied*, 469 U.S. 933 (1984). Washington construes the term broadly: "The meaning of marital status as used in RCW 49.60.180 is not limited to conditions such as being married, single, or divorced, but also applies to antinepotism policies based on the identity of the employee's or applicant's spouse." *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 488, 859 P.2d 26 (1993), 865 P.2d 507 (1994).

The Human Rights Commission was given broad rule-making powers to promulgate rules to effect the purpose of RCW 49.60. *Washington Water Power Co. v. Washington State Human Rights Comm'n*, 91 Wn.2d 62, 586 P.2d 1149 (1978). The rule relating to discrimination based on marital status, WAC 162-16-150, provides discrimination against an employee because of a person's marital status, who his or her spouse is, or what the spouse does, is an action based on the person's marital status.

The record discloses that the circumstances surrounding termination of Ms. Magula's employment related to allegations of misconduct by her husband. There are no allegations of misconduct by Ms. Magula. The evidence creates a genuine issue of fact as to whether Ms. Magula was discriminated against based on who her spouse was, his conduct or what he did.

It may be that she would have been discharged even if the same allegations of misconduct had been made about some relative other than her spouse, because of office disruption. A jury could conclude she would have been discharged regardless of her relationship with Mr. Magula. This, however, is a determination which must be made by the factfinder after trial. Therefore, we reverse the summary judgment.

Ms. Magula contends BFT made specific promises of specific treatment which precluded her discharge except for cause.

■ If an employer makes promises of specific treatment in specific situations, thereby inducing an employee to remain on the job, the promises are enforceable. *Thompson*, 102 Wn.2d at 230. General promises of policy are not binding; whether the statements contained in an employee manual are sufficiently specific to be enforceable is a question of law. *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988). If the court decides the promises are sufficiently specific to be enforceable, the remaining issues present questions of fact, i.e., whether such statements are applicable to the particular employee, whether they created an atmosphere of fair treatment, whether the employee remained on the job in reliance thereon, and whether those promises were breached. *Siekawitch v. Washington Beef Producers, Inc.*, 58 Wn. App. 454, 793 P.2d 994 (1990).

BFT provided its employees with a document entitled "Company Policies" which contained general assurances regarding the company's policy of reasonable treatment, and specified one type of conduct, tardiness or absenteeism, as grounds for discharge, it contained no promises of specific treatment in other specific situations. The statements are insufficient, as a matter of law, to give rise to a claim based on the alleged breach of specific promises.

Ms. Magula contends the totality of the circumstances created an implied agreement she would be discharged only for cause.

■ An employment agreement, otherwise terminable at will, may be terminable only for cause if there is an implied agreement to that effect. *Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 568 P.2d 764 (1977). For purposes of summary judgment, evidence of the existence of such an agreement is considered in the light most favorable to the nonmoving party. *Parker v. United Airlines, Inc.*, 32 Wn. App. 722, 725-26, 649 P.2d 181, *review denied*, 98

Wn.2d 1011 (1982). Neither the employee's subjective understanding nor management assurances of steady employment are sufficient to establish the existence of such an implied agreement. *Roberts*, 88 Wn.2d at 894; *Parker*, 32 Wn. App. at 725.

Ms. Magula cites no evidence, apart from general assurances of reasonable treatment contained in the policy memo and the lack of any express statement that her employment was terminable at will, which would support finding an implied agreement to discharge her only for cause. This claim was properly rejected.

Finally, Ms. Magula contends she entered into an express agreement with Mr. Bowers that she would not be terminated if she put the incident with Ms. Hendler behind her and continued to do her job. Ms. Magula describes the agreement as follows:

> He asked me to agree that I would not aggravate the situation or fail to put the matter behind me or seek revenge or my job would be terminated. I agreed with him that I would not let this matter affect my work in the workplace, that I would not seek revenge or aggravate the situation in any way and that I very much wanted to keep my job which I had held for fourteen years. After those discussions, we had reached such an agreement.

By Ms. Magula's own description, the only agreement she had with Mr. Bowers was that if she made the situation worse or failed to do her job she would be discharged.[1] She does not allege any promise by Mr. Bowers to refrain from terminating her if she continued to do her job. The record does not provide any factual basis for this claim.

---

[1]Mr. Bowers' description of the agreement is the same: "The agreement that I was working toward and having discussion with all of the parties was because of my concern for their ability to be effective in their jobs, that if they could not commit to putting this behind them and not allowing it to impact the workplace, those around them, Benton-Franklin Title Company, then I would dismiss them."

Reversed and remanded for trial on the issue of discrimination based on marital status.

SWEENEY, A.C.J., and SCHULTHEIS, J., concur.

Review granted at 128 Wn.2d 1011 (1996).