[No. 36055-8-I.    Division One.    July 22, 1996.]

DOUGLAS SELIX, *Appellant,* v. THE BOEING COMPANY, *Respondent.*

*Clifford Freed*, and *Frank and Rosen*, for appellant.

*Jeffrey A. Hollingsworth* and *Elizabeth A. Blomberg*, and *Perkins Coie*, for respondent.

KENNEDY, A.C.J. — Douglas Selix appeals the order of summary judgment in favor of The Boeing Company dismissing his claim for wrongful termination of employment. Selix contends that Boeing's decision to terminate him based on his conviction of fourth degree assault contravenes the public policy set forth in RCW 9.96A.010, as articulated by his sentencing judge. We conclude that the statement of public policy contained in the statute does not prohibit a private employer from dismissing an

employee based solely on a criminal conviction, and affirm.

## FACTS

In March of 1989, Selix was hired as a systems analyst by Boeing Aerospace. He worked in that capacity until the spring of 1991, when he transferred to Boeing Computer Services. While he was with Boeing Computer Services, Selix served as an acting first level manager reporting to Kjell Carlson.

On December 31, 1991, Selix was charged in Snohomish County Superior Court with three counts of felony child molestation. The case went to trial in June of 1992. Selix was acquitted of one count of child molestation and convicted of one count of the lesser included misdemeanor offense of fourth degree assault. The third count was dismissed by the court for insufficient evidence. The court sentenced Selix to 12 months, with 10 months suspended, one month converted to 240 hours of community service, and one month of actual jail time. In structuring Selix's sentence, the court allowed him to serve his jail time on weekends so that he could preserve his employment. Selix was ordered to have no unsupervised contact with minor children.

On August 8, 1992, Selix informed Carlson of his conviction. Carlson testified in deposition that based on the information provided him by Selix, he "personally wasn't planning to take any action." Clerk's Papers at 162. In late July or early August of 1992, Boeing discovered Selix's conviction through other sources. On August 13, 1992, Laurence Cunningham, a Boeing security officer, interviewed Selix regarding his conviction. Following the interview, Cunningham prepared a report for Tracy Buren, the discipline coordinator at Boeing Computer Services. After reviewing the certification of probable cause contained in the Superior Court file in the criminal matter, as well as the judgment and sentence, Buren recom-

mended Selix's termination based on Boeing's strict policy against offenses of a sexual nature. Diana Peterson, a personnel manager, and her supervisor Barry Noel agreed with Buren's recommendation.[1]

On August 25, 1992, Boeing terminated Selix for violating a Boeing Company Rule forbidding the "commission of a penal offense." Clerk's Papers at 98.[2] On September 8, 1992, Selix's sentencing judge wrote Selix a letter expressing his "surprise and dismay" at Boeing's decision to terminate Selix. The judge stated:

> Although I cannot modify your sentence, I strongly urge the Boeing Company to review its termination decision in light of the fact that I consider your unemployed status as being inconsistent with the goals of my sentence, and as being detrimental to your ultimate rehabilitation.

Clerk's Papers at 143. Boeing reviewed the letter but maintained its decision to terminate Selix.

Selix filed suit on March 2, 1993, alleging, inter alia, wrongful termination in violation of public policy. On September 2, 1994, the trial court granted Boeing's motion for summary judgment on the wrongful termination

---

[1]Despite Selix's assertions to the contrary, Carlson testified in deposition that ultimately he "did concur with the decision [to terminate Selix] and support it." Clerk's Papers at 174.

[2]Boeing's Company Rules provide that:

Appropriate disciplinary measures will be taken when an employee is determined by the Company to have committed any of the actions listed below, or when any employee engages in any practice which is inconsistent with ordinary, reasonable, common sense rules of conduct.

. . . .

UNACCEPTABLE CONDUCT OR PERFORMANCE

Commission of a penal offense.

Clerk's Papers at 127-28. Although Selix devotes considerable energy to a discussion of Boeing's disciplinary policy and its administration, he has not raised a claim that Boeing violated its policies, or that it acted in a discriminatory manner. Thus, because Boeing admits that Selix was terminated because he committed a penal offense, and because the only issue on appeal is whether termination on this basis violates public policy, Selix's discussion of the administration of Boeing's policy is largely irrelevant.

claim, and denied Selix's cross motion on the same issue. The case proceeded to trial on the remaining issues on December 12, 1994, and the verdict was in favor of Boeing. Selix appeals only the trial court's grant of summary judgment in favor of Boeing on the wrongful termination claim.

## DISCUSSION

Selix contends that the trial court erred in ordering summary judgment in favor of Boeing because Boeing's decision to terminate him based on his conviction of fourth degree assault contravenes the mandate of public policy set forth in RCW 9.96A.010, as articulated by his sentencing judge. Boeing responds that summary judgment was proper because RCW 9.96A, by its express terms, relates only to public employers and thus is not applicable to its decision to terminate Selix.

■ When reviewing an order granting summary judgment, an appellate court engages in the same inquiry as the trial court. *Failor's Pharmacy v. DSHS*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994); *Fisher v. Aldi Tire, Inc.*, 78 Wn. App. 902, 906, 902 P.2d 166 (1995), *review denied*, 128 Wn.2d 1025 (1996). This court will affirm an order granting summary judgment if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c).

■ The general rule in Washington is that an employment relationship is terminable at will by either the employer or the employee. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984); *Magula v. Benton Franklin Title Ins. Co.*, 79 Wn. App. 1, 3, 901 P.2d 313 (1995), *review granted*, 128 Wn.2d 1011 (1996). An employee will have a cause of action in tort for wrongful discharge, however, if the discharge contravenes a clear mandate of public policy. *Dicomes v. State*, 113 Wn.2d 612, 617, 782 P.2d 1002 (1989); *Thompson*, 102 Wn.2d at 232.

"In determining whether a clear mandate of public policy is

violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy."

*Thompson*, 102 Wn. 2d at 232 (quoting *Parnar v. Americana Hotels, Inc.*, 65 Hawaii 370, 380, 652 P.2d 625 (1982)).

The public policy exception to the employment at will doctrine is a narrow one, and the burden is on the employee to prove that the dismissal violates a clear mandate of public policy. *Thompson*, 102 Wn.2d at 232; *Roe v. Quality Transportation Servs.*, 67 Wn. App. 604, 607, 838 P.2d 128 (1992). Courts must "find" not "create" public policy, and the existence of such public policy must be "clear." *Roe*, 67 Wn. App. at 610. In discussing the meaning of "clear mandate of public policy," the Supreme Court has noted that: " 'In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively.' " *Dicomes*, 113 Wn.2d at 618 (quoting *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876 (1981)). The question of what constitutes a clear mandate of public policy is one of law. *Dicomes*, 113 Wn.2d at 617.

Selix contends that RCW 9.96A.010 contains a clear mandate of public policy that persons convicted of crimes should be allowed to continue employment. Selix contends that Boeing violated that policy when it terminated him based on his conviction of fourth degree assault. RCW 9.96A.010 provides:

> The legislature declares that it is the policy of the state of Washington to encourage and contribute to the rehabilitation of felons and to assist them in the assumption of the responsibilities of citizenship, and the opportunity to secure employment or to pursue, practice or engage in a meaningful and profitable trade, occupation, vocation, profession or business is an essential ingredient to rehabilitation and the assumption of the responsibilities of citizenship.

RCW 9.96A.010.

Selix is correct in asserting that RCW 9.96A.010 contains a declaration of public policy. He is also correct in arguing that by its express terms, and according to the statement of one of its drafters, RCW 9.96A.010 is not limited to public employers.[3] However, RCW 9.96A.010 must be read in light of RCW 9.96A.020, which provides in pertinent part:

(1) Subject to the exceptions in subsections (3) and (4) of this section, and unless there is another provision of law to the contrary, a person is not disqualified from employment by the state of Washington or any of its counties, cities, towns, municipal corporations, or quasi-municipal corporations, nor is a person disqualified to practice, pursue or engage in any occupation, trade, vocation, or business for which a license, permit, certificate or registration is required to be issued by the state of Washington or any of its counties, cities, towns, municipal corporations, or quasi-municipal corporations solely because of a prior conviction of a felony. However, this section does not preclude the fact of any prior conviction of a crime from being considered.

(2) A person may be denied employment by the state of Washington or any of its counties, cities, towns, municipal corporations, or quasi-municipal corporations, or a person may be denied a license, permit, certificate or registration to pursue, practice or engage in an occupation, trade, vocation, or business by reason of a prior conviction of a felony if the felony for which he or she was convicted directly relates to the position of employment sought or to the specific occupation, trade, vocation, or business for which the license, permit, certificate or registration is sought, and the time elapsed since the conviction is less than ten years.

RCW 9.96A.020(1), (2).

[3]Donald Horowitz, one of the drafters of RCW 9.96A.010 et seq., stated:

Section 1 of the bill (codified as RCW 9.96A.010) plainly articulated the public policy of the state: to encourage and contribute to rehabilitation of felons; to assist them in assumption of responsibilities of citizenship; and that the opportunity to secure employment is an essential ingredient of rehabilitation. The public policy as drafted and stated was not limited to nor was it intended to be limited to only public employees." Clerk's Papers at 40-41.

■ Although RCW 9.96A.010 contains a declaration of public policy, given the specific provisions of RCW 9.96A.020(1) and (2), we interpret the policy set forth in RCW 9.96A.010 as simply a general policy supporting the rehabilitation of felons. Because this court is required by *Thompson* to "find" rather than "create" public policy, we do not read into the general language of RCW 9.96A.010 a specific mandate prohibiting a private employer from terminating an employee based solely on a criminal conviction. The specific policy prohibiting the disqualification of an employee based solely on a prior criminal conviction, the policy under which Selix seeks redress, is set forth in RCW 9.96A.020(1). As Boeing argues, however, that section is limited by its express terms to public employers and accordingly is inapplicable to Boeing's decision to terminate Selix. Thus, neither RCW 9.96A.010 nor RCW 9.96A.020 contains a clear mandate of public policy prohibiting Boeing's termination of Selix based solely on his criminal conviction. *Accord Klein v. Boeing Co.*, 847 F. Supp. 838, 842 (W.D. Wash. 1994) (In action by plaintiff who had been discharged for commission of penal offense involving children, court held that even if plaintiff had properly asserted a claim for wrongful termination in violation of public policy, the claim would fail because the court found no legislative or judicial statements recognizing a public policy which is contravened by a rule which allows the discharge of those who commit sex crimes involving children).

■ Selix also argues that by terminating him, Boeing deprived him of the right to pursue a business regulated by the state in contravention of RCW 9.96A.020(1). The pertinent language states: "nor is a person disqualified to practice . . . any . . . business for which a license, permit, certificate or registration is required to be issued by the state of Washington . . . solely because of a prior conviction of a felony." RCW 9.96A.020(1). Selix's argument is without merit. Boeing did not preclude Selix from engaging in any business requiring the issuance of a license,

permit, certificate or registration by the state or any of its sub-entities. Boeing's decision to terminate Selix simply precluded Selix from working at Boeing. Boeing is engaged in a business and presumably operates under a business license, but its employees are not required to obtain a business license from the state in order to be employed. This portion of the statute is aimed at the state and its sub-entities which issue licenses, permits and certificates, not at private employers.

Boeing contends that Selix also argues that his sentence following his criminal conviction is a "prior judicial decision" which embodies a clear mandate of public policy prohibiting his termination based on the conviction. We do not so read Selix's brief, and interpret his argument as being that the sentencing judge recognized the public policy embodied in RCW 9.96A.010, and structured his sentence in accord with that policy. Nevertheless, to the extent that Selix may be arguing that his sentence is a "prior judicial decision" within the meaning of *Thompson* and *Parnar, supra,* we disagree. The intentions of a sentencing judge in structuring a particular defendant's sentence do not constitute a "prior judicial decision" setting forth a clear mandate of public policy within the meaning of *Thompson* and *Parnar. See Dicomes,* 113 Wn.2d at 617-18 (public policy concerns something which affects the citizens of a state collectively).

Because RCW 9.96A does not contain a clear mandate of public policy prohibiting a private employer from terminating an employee based solely on a criminal conviction, we hold that the trial court did not err in granting summary judgment dismissing Selix's claim for wrongful termination in violation of public policy.

Affirmed.

COLEMAN and COX, JJ., concur.

Review denied at 130 Wn.2d 1024 (1997).