[No. 39924-1-I.    Division One.    June 29, 1998.]

DIXIE L. COLE, *Appellant*, v. RED LION, ET AL.,
*Respondents.*

*Lee Jacobson*, for appellant.
*David J. Riewald*, for respondents.

COLEMAN, J. — Dixie Lee Cole appeals the summary judgment dismissal of her claim for wrongful termination in breach of an implied employment contract. While Cole was served with her former employer's motion less than 28 days before the hearing's original date, Cole caused the hearing to be continued. Because the hearing was postponed beyond the minimum time period after filing and service were complete, we hold that the lower court properly considered the summary judgment motion. Cole argues that provisions in two employee manuals created an employment contract that she would not be fired for absences if she gave advance notice. But because the evidence allows only the conclusion that Cole's at-will employment was not contractually modified, we hold that she failed to create an issue of fact. Because her employer made no enforceable promise of job security as a matter of law, we affirm the summary judgment dismissal of Cole's wrongful discharge claim.

After nine years working at Bellevue's Red Lion Hotel as a cashier and greeter, Cole began to work part-time at the Embassy Suites Hotel as well. When Red Lion fired her for missing work due to a scheduling conflict with her other job, Cole sued for age discrimination, unfair business practice, outrage, infliction of emotional distress, and breach of implied employment contract. The lower court dismissed all her claims. Only her employment contract claim is at issue in this appeal.

When Red Lion hired Cole in 1981, she received an em-

ployee manual. The manual contained no express at-will employment provision, but it provided that permanent employees "may expect a fair hearing on any problem or dispute that may arise." It also expressed Red Lion's policy to consider the nature of each violation and the employee's past record before taking any disciplinary action. One of Cole's job description requirements was flexibility to work a variety of hours. Cole initialed the following conditions in the manual's two-page employment agreement:

7. I understand that my schedule will be posted . . . and that my attendance is mandatory on those days scheduled. I also understand that if through an emergency I cannot arrive to work on the scheduled day and time, I will call my department and speak with a manager to explain my absence at least two hours in advance of that time I am scheduled to report to work.

8. I understand that I may be discharged without warning if I commit any of the following acts:

. . . .

Failing to report to work when scheduled without authorization.

. . . . Willful refusal to follow work instructions given by management.

The manual also warned that neglecting one's duties or violating established rules could be disciplined with termination. More specifically, it stated that "[r]epeated absences or tardiness will result in disciplinary action and possible termination if not corrected. Any employee absent for three or more days without proper notice or justification will be terminated." Two other examples of prohibited conduct subject to discipline were "[w]illful insubordination or failure to carry out job assignments" and "[e]xcessive absenteeism or tardiness."

Years later, Red Lion issued an updated employee manual. The new manual's opening section provides that the employment relationship is "at will" and that Red Lion

"may terminate you from your employment at any time with or without cause." It expressly states that its provisions are guidelines and not intended to confer any contractual obligations. At another page, the new manual reiterates that "Red Lion Inns may terminate the employment relationship at any time, for any reason, with or without cause." The updated manual also provides:

> If for any reason you are unable to report to work, you are expected to notify your department head or the Manager-on-Duty at least two (2) hours in advance so that arrangements can be made to cover your shift. Failure to report to work on schedule is considered your own voluntary termination.
>
> Since our work depends upon working together, when you are not on the job everyone else must adjust to assume your workload. It is your responsibility—both to your fellow employees and the Red Lion Inns—to be on the job on time. If, however, you are faced with an emergency, call your supervisor as soon as possible. Repeated absences or tardiness will result in disciplinary action up to and including discharge in Red Lion Inns' sole discretion. Any employee absent from work without proper notice or justification will be terminated as this is considered your voluntary intent to terminate your employment.

While the new manual gives an illustrative list of conduct that may warrant discharge, Red Lion expressly reserves the right to discharge employees, in its sole discretion, for any unlisted conduct.

After years of an apparently perfect attendance record, Cole failed to report for her shift on March 28, 1993. She also arrived an hour late the next day. When Cole met with her supervisor and the Human Resources Director to discuss these absences, she requested a fixed part-time schedule to prevent future conflicts with her shifts at the Embassy Suites Hotel. Her superiors replied that Red Lion needed to retain flexibility, but offered her full-time employment. Cole rejected the offer and said that she would continue to work at the Embassy Suites on Wednesdays. Red Lion warned Cole in writing that "[f]uture incidents

will result in further disciplinary actions up to and including termination."

The next week, Red Lion scheduled Cole to work on Wednesday, May 5, 1993, when she was also scheduled to work at Embassy Suites. Cole had not been scheduled on Wednesdays for a long time because she and Red Lion had what she called a gentlemen's agreement. Cole gave notice and repeated to her supervisors several times that she would not be able to work that day. Her manager warned that if she did not find a replacement, her failure to work her Wednesday shift would be considered a voluntary quit. Without finding anyone to cover her shift, Cole did not show up on May 5, 1993. She was discharged the next day on the basis that her unauthorized failure to work a scheduled shift was a voluntary quit.

Red Lion moved for summary judgment dismissal of Cole's breach of employment contract claim. The hearing was set for September 30, 1996. Cole claimed that the motion was not timely because she was not served until September 4, 1996. *See* CR 56(c) (summary judgment motion must be served 28 days before hearing date). Cole also argued that the motion was improper because she did not receive signed copies of the accompanying affidavits until September 11, 1996. When the judge originally assigned to hear the motion granted Cole's recusal motion, the hearing was postponed to October 18, 1996. The lower court rejected Cole's timeliness objections and heard Red Lion's motion.

In dismissing Cole's employment contract claim, the lower court focused on the lack of evidence showing that the employer made a promise of specific treatment in specific situations:

As I say, I do this regretfully. Obviously this was a very good employee for any number of years. But, I find that there was no promise to specifically never schedule her on a Wednesday, nor was there a specific promise that as long as she said she wasn't working that she would not be terminated . . . .

. . . . [T]he document that gets handed to her after the

March 28th snafu clearly indicates if this happens again, you will be terminated. That would not necessarily modify the employment contract, if one existed, but I just find that there is insufficient evidence that there really was an employment contract that modified the at will provision. There's simply—it simply lacks the specificity required.

Cole appeals this summary judgment ruling.

We first decide whether the lower court properly considered Red Lion's summary judgment motion. Red Lion was required to file and serve its motion, along with any supporting affidavits, "not later than 28 calendar days before the hearing." CR 56(c). The hearing was originally noted for Monday, September 30, 1996. Cole claims that the motion was neither filed nor served in a timely fashion. She concedes, however, that filing and service were complete on September 11, 1996, when she received signed copies of the supporting affidavits. Cole ignores the fact that due to her successful motion to disqualify the originally assigned judge, Red Lion's summary judgment motion was continued to October 18, 1996.

■■ CR 56(c)'s filing and service dates are calculated as 28 calendar days before "the hearing." We hold that this rule applies to the date on which the hearing actually occurs. By Cole's allegations, she was served with a completed motion more than 28 days before the continued hearing. In any event, Cole has made no attempt to show prejudice. *See Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 364, 617 P.2d 704 (1980) (CR 6(a)'s filing deadlines are not jurisdictional and reversal for failure to comply requires a showing of prejudice). We hold that the lower court properly considered Red Lion's summary judgment motion on the merits.

We next decide whether summary judgment was appropriate in this case. Cole argues that there is a genuine factual dispute whether Red Lion's employee manuals contained promises that created an employment contract. We affirm the lower court's summary judgment order because reasonable minds could only conclude that nothing

in the employee manuals altered the at-will nature of Cole's employment.

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *E.g.*, *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 623-24, 881 P.2d 201 (1994).

In Washington, the employment relationship is generally terminable "at will" by either the employer or the employee. *E.g.*, *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). This means that either party may terminate the relationship at any time, for any or no reason. *Id.* at 225-26. A discharged employee may have a cause of action for wrongful termination, however, if he or she can establish that employee manuals altered the at-will relationship by creating an implied employment contract. *Id.* at 229. The plaintiff must show that his or her employer created an atmosphere of job security and fair treatment with "promises *of specific treatment in specific situations*[.]" *Id.* at 230. While this inquiry entails interpreting contract provisions, it is normally a question of fact. *Accord*, *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613-14, 762 P.2d 1143 (1988). But the issue may be decided as a matter of law on summary judgment if reasonable minds could reach only one conclusion. *See Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 522, 826 P.2d 664 (1992).

Cole relies on the employee manual provision that employees unable to work their assigned shifts should notify the Red Lion either as soon as possible or at least two hours in advance. She also claims that termination was allowed only for excessive absenteeism or for three or more absences without proper notice. Finally, Cole also relies on the provisions that, before termination, she could expect a fair hearing and consideration of the nature of her violation and her past record.

■ ■ ■ None of the provisions upon which Cole relies, nor any other provision of either employee manual, contains a specific promise that Cole could not be immediately fired for missing a shift. While the manuals encourage employees to give advance notice of their inability to work scheduled shifts, no rational trier of fact could infer that this created an employment contract. The advance notice provision is immediately followed by the sentence that failure to report to work is considered a voluntary termination. The original manual's provision that excessive absenteeism may result in termination is merely an example by its own express terms, and thus it does not preclude termination based on a single failure to report to work. *Accord, Magula v. Benton Franklin Title Ins. Co.*, 79 Wn. App. 1, 5, 901 P.2d 313 (1995), *aff'd* 131 Wn.2d 171 (1997) (specifying one ground for termination is insufficient as a matter of law to preclude other grounds). The list of actionable conduct begins with language that neglect of one's duties may be punished with termination. Moreover, Cole signed the agreement that failing to report to work without authorization may result in discharge without warning. There can be no dispute that her May 5, 1993 absence was unauthorized.

■ Even if the original employee manual could be interpreted to have modified the at-will nature of Cole's employment, the updated manual, upon which she also claims to have relied, unambiguously precludes her cause of action. An employer may unilaterally amend or revoke previously established policies and procedures as long as the employee receives reasonable notice of the change. *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 434, 815 P.2d 1362 (1991). Cole concedes that she knew about the updated employee manual and relied on its provisions. This manual is replete with at-will employment provisions and thus cannot rationally be read to limit Red Lion's discretion to terminate Cole for any reason. Moreover, after her first absence, Cole had been warned in writing that any future violations of Red Lion's attendance

policy could result in termination. Because Cole failed to produce any evidence that would allow a rational inference that she could be fired only for cause, we hold that the lower court correctly dismissed her implied employment contract claim on summary judgment.

We affirm.

BECKER and ELLINGTON, JJ., concur.