65 P.3d 330 (2003)
116 Wash.App. 30
Israel VARGAS and Isabel Vargas, husband and wife, Appellants,
v.
STATE of Washington; State of Washington, Department of Social and Health Services; Linda Peterson; and John Bumford and Carolyn Bumford, husband and wife, Respondents.
No. 20879-6-III.
Court of Appeals of Washington, Division 3, Panel Six.
January 28, 2003.
Publication Ordered March 18, 2003.
*332 William M. Hanbey, Attorney at Law, Olympia, WA, for Appellants.
Talis M. Abolins, Assistant Attorney General, Olympia, WA, for Respondents.
*331 KURTZ, J.
After a successful appeal to the Washington State Personnel Appeals Board, Israel Vargas was reinstated to his position as a fraud investigator for the Office of Special Investigation. Thereafter, Mr. Vargas sued the State of Washington for wrongful termination in violation of public policy. Mr. Vargas's case was dismissed on summary judgment. He appeals contending the court erred by (1) finding that a public employer can take disciplinary action against a civil servant for alleged misconduct during off-duty hours, and (2) refusing to grant collateral estoppel effect to the ruling of the Personnel Appeals Board. We affirm the judgment of the superior court.

FACTS
The Division of Fraud Investigations (DFI) is a unit of the Department of Social and Health Services (DSHS) responsible for investigating and preventing fraud by DSHS vendors and persons receiving public assistance. Israel Vargas is employed as an investigator in DFI's Region 2, which covers Yakima and the surrounding area.
In April 1996, the Sunnyside Police Department received information from an informant that Mr. Vargas was selling cocaine and marijuana from his home. The police set up a controlled buy and saw the informant go into Mr. Vargas's home and return with cocaine. Mr. Vargas was arrested and charged with delivery of a controlled substance and maintaining a drug dwelling.
The director of DFI, John Bumford, placed Mr. Vargas on home assignment. Mr. Bumford informed Mr. Vargas that he was considering discharging him and asked Mr. Vargas to respond to the charges. Mr. Vargas submitted a responsive letter stating: "I deny all allegations set forth in your correspondence." Clerk's Papers (CP) at 229. Thereafter, Mr. Bumford issued a letter to Mr. Vargas of suspension and dismissal. Mr. Vargas appealed to the Personnel Appeals Board (PAB).
Before the PAB hearing, the criminal charges against Mr. Vargas were dismissed without prejudice due to witness intimidation. Mr. Vargas asked Mr. Bumford for reinstatement as a DFI investigator. Mr. Bumford refused to reinstate Mr. Vargas maintaining that the reasons for his discharge remained valid.
The PAB conducted a hearing and determined that the discipline was based on Mr. Vargas "`being arrested and charged with a crime.'" CP at 247. Since those charges were dismissed, the PAB concluded that the discipline charges should be dismissed. Mr. Vargas was reinstated with full back pay and back benefits.
In June 1998, Mr. Vargas and his wife filed this suit asserting nine separate causes of action. Mr. Vargas voluntarily dismissed four of these causes of action with prejudice and focused on his claim of wrongful discharge in violation of public policy. The court granted Mr. Vargas's motion for partial summary judgment and estopped the parties from denying the findings of the PAB. The court granted the State's motion for summary judgment and dismissed Mr. Vargas's remaining claims. Mr. Vargas appeals.

ANALYSIS
Did the court err by concluding that a public employer can take disciplinary action against a civil servant for alleged misconduct during off-duty hours?
Motions for summary judgment are reviewed de novo. Ellis v. City of Seattle, 142 Wash.2d 450, 458, 13 P.3d 1065 (2000) (citing Trimble v. Wash. State Univ., 140 Wash.2d 88, 92, 993 P.2d 259 (2000)). The "`appellate court engages in the same inquiry as the trial court.'" Ellis, 142 Wash.2d at 458, 13 P.3d 1065 (quoting Trimble, 140 Wash.2d at 92, 993 P.2d 259). "`Summary judgment is appropriate if there is no genuine issue of material fact and the moving *333 party is entitled to judgment as a matter of law.'" Ellis, 142 Wash.2d at 458, 13 P.3d 1065 (quoting Trimble, 140 Wash.2d at 93, 993 P.2d 259). A court must consider all facts and any reasonable inferences in the light most favorable to the nonmoving party. Ellis, 142 Wash.2d at 458, 13 P.3d 1065 (citing Trimble, 140 Wash.2d at 93, 993 P.2d 259). A motion for summary judgment should only be granted "`if, from all the evidence, reasonable persons could reach but one conclusion.'" Ellis, 142 Wash.2d at 458, 13 P.3d 1065 (quoting Trimble, 140 Wash.2d at 93, 993 P.2d 259).
Mr. Vargas contends he was wrongfully discharged from his employment in violation of public policy. An employee has a cause of action in tort for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy. Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 232, 685 P.2d 1081 (1984). In order to establish a claim for wrongful discharge in violation of public policy, a plaintiff must prove (1) the existence of a clear public policy (clarity element); (2) that discouraging the conduct in which they engaged would jeopardize the public policy (jeopardy element); and (3) that the public-policy-linked conduct caused the dismissal (causation element). Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 941, 913 P.2d 377 (1996). Finally, (4) the "defendant must not be able to offer an overriding justification for the dismissal" (absence of justification element). Id.
In Thompson, the court cautioned that "`courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.'" Thompson, 102 Wash.2d at 232, 685 P.2d 1081 (emphasis omitted) (quoting Parnar v. Americana Hotels, Inc., 65 Haw. 370, 380, 652 P.2d 625 (1982)). The public policy action has generally been recognized in four different situations: where an employee is fired (1) for refusing to commit an illegal act; (2) for performing a public duty or obligation; (3) for exercising a legal right or privilege; and (4) in retaliation for reporting employer misconduct. Dicomes v. State, 113 Wash.2d 612, 618, 782 P.2d 1002 (1989).
Although "[t]he question of what constitutes a clear mandate of public policy is one of law,"[1] the employee bears the burden of establishing the existence of a clear mandate of public policy and that his or her discharge contravenes or jeopardizes that public policy. Gardner, 128 Wash.2d at 941, 913 P.2d 377. Mr. Vargas contends that it is a violation of public policy for a public employer to discipline a public employee for alleged misconduct that transpired during nonwork time. Mr. Vargas argues that the DFI had no more authority to take disciplinary action against him than it could against a nonemployee citizen of the state.
"`In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.'" Thompson, 102 Wash.2d at 232, 685 P.2d 1081 (emphasis omitted) (quoting Parnar, 65 Haw. at 380, 652 P.2d 625). "Courts must `find' not `create' public policy, and the existence of such public policy must be `clear.'" Selix v. Boeing Co., 82 Wash.App. 736, 741, 919 P.2d 620 (1996) (quoting Roe v. Quality Transp. Servs., 67 Wash.App. 604, 610, 838 P.2d 128 (1992)).
Mr. Vargas's rights as a public employee were violated when he was wrongfully discharged. But, the statutory rights of state employees provided Mr. Vargas with a remedy and his rights as a civil servant do not necessarily affect society as a whole. Similarly, Mr. Vargas argues that the presumption of innocence establishes a clear public policy. But, the right to be presumed innocent is limited to criminal proceedings. This right is not a public policy applicable in the employment context. Mr. Vargas's claims are based upon vague public policy mandates not clearly reflected in the law. *334 Accordingly, we conclude the court did not err by finding that Mr. Vargas has not established an action for wrongful discharge in violation of public policy.
Did the court err by failing to grant collateral estoppel effect to the ruling of the PAB?
Mr. Vargas contends that the court erred by failing to grant collateral estoppel effect to the ruling of the PAB. "The doctrine of collateral estoppel is well known to Washington law as a means of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal." Reninger v. Dep't of Corrections, 134 Wash.2d 437, 449, 951 P.2d 782 (1998). Collateral estoppel promotes judicial economy, and prevents inconvenience and the harassment of parties. Hanson v. City of Snohomish, 121 Wash.2d 552, 561, 852 P.2d 295 (1993).
The elements of collateral estoppel are:
"(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."
Reninger, 134 Wash.2d at 449, 951 P.2d 782 (quoting Southcenter Joint Venture v. Nat'l Democratic Policy Comm., 113 Wash.2d 413, 418, 780 P.2d 1282 (1989)).
The court initially granted Mr. Vargas's motion for partial summary judgment, holding that the State was bound by facts established by the PAB. However, the court later refused to apply collateral estoppel as to the issue of wrongful termination in violation of public policy finding that it was not an issue decided by the PAB.
It has been determined that decisions of administrative tribunals may have preclusive effect under Washington law. Reninger, 134 Wash.2d at 449, 951 P.2d 782; see Luisi Truck Lines, Inc. v. Wash. Util. & Transp. Comm'n, 72 Wash.2d 887, 894, 435 P.2d 654 (1967). If an administrative agency is acting in a judicial capacity and if the parties have had an adequate opportunity to litigate, courts will apply preclusive effect to the agency's decisions. Stevedoring Servs. v. Eggert, 129 Wash.2d 17, 40, 914 P.2d 737 (1996) (citing Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 501 (5th Cir.1988)); State v. Dupard, 93 Wash.2d 268, 274, 609 P.2d 961 (1980) (citing United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). However, the court in Smith v. Bates Technical Coll., 139 Wash.2d 793, 991 P.2d 1135 (2000), discourages reliance on the administrative forum when the tort of wrongful discharge in violation of public policy is at issue. Id. at 809, 991 P.2d 1135. The Supreme Court reasoned that the tort is distinctive in nature and remedy, grounded in purely public concerns, and is outside an administrative agency's area of competence. Id. at 805, 991 P.2d 1135.
The issue before the PAB was the reinstatement of Mr. Vargas's employment. The PAB did not address the tort of wrongful discharge in violation of public policy. In order to have identity of issues, the issue must have been actually litigated and necessarily decided in the agency forum before the agency decision will have preclusive effect. Shoemaker v. City of Bremerton, 109 Wash.2d 504, 508, 745 P.2d 858 (1987). The PAB did not address Mr. Vargas's tort claim. Thus, Mr. Vargas has failed to establish the first element of collateral estoppel, "identical issues," and collateral estoppel cannot apply. The court did not err by refusing to apply collateral estoppel to the PAB decision. There are no genuine issues of material fact remaining and the court properly granted summary judgment.
Affirm.
WE CONCUR: SWEENEY and SCHULTHEIS, JJ.
NOTES
[1] Dicomes, 113 Wash.2d at 617, 782 P.2d 1002.