# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF STANWOOD, | ) | NO. 73195-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WARREN E. BOHON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 13, 2016 |
| | ) | |

VERELLEN, C.J. —Warren Bohon appeals from the summary judgment order dismissing his claims against his former employer, the City of Stanwood. He argues that summary judgment was improper because (1) the City failed to provide timely notice of the summary judgment hearing, (2) the trial court rejected his summary judgment materials without considering the Burnet factors and denied his motion for a continuance, (3) the trial court relied on unsigned affidavits and should have considered his entire deposition testimony, and (4) there were material questions of fact precluding summary judgment. We affirm.

## FACTS[1]

In 1992, the City of Stanwood hired Warren Bohon at the age of 59 to work as a part-time code enforcement officer in the Community Development Department. Eventually, Bohon worked as a building inspector.

During Bohon's tenure with the City, he claimed that he "blew the whistle" on corruption in his department. In particular, he disagreed with the City's decision to hire Les Anderson, the Public Works Director, and Bill Beckman, the City Administrator, and claimed those decisions were based on corruption.

In 2001, Stephanie Cleveland Hansen was hired as the Community Development Director and became Bohon's immediate supervisor.

Four years later, in November 2005, Hansen directed Bohon to move his office from the Public Works Department building, known as the "Lagoon Building," to City Hall, where she and the rest of Bohon's department worked.

Bohon refused. On December 1, he sent a memorandum to Hansen and, although she had not yet assumed office, newly elected Mayor Dianne White. The memorandum was entitled "[r]elocation of office of Warren Bohon" and included Bohon's statement that he was "claiming all the protections afforded a 'WHISTLEBLOWER' provided in Federal, State and City laws." Clerk's Papers (CP) at 139. Bohon described his belief that Beckman "unduly influenced" Mayor Kuhnley for a promotion and that he was unqualified. He described how he had organized a meeting

---

[1] Bohon's recitation of facts includes citations to documents appended to his opening brief, but not included in our appellate record. Our discussion of the facts is limited to the record on appeal of the evidence before the trial court on summary judgment.

for "City employees to present our objections to continuing the 'Abuses of Authority' and the [g]ross waste of Public Funds [] that inherently would associate with such an act by the Mayor." CP at 139. Finally, he claimed that a different employee, Les Anderson, "took steps" to force his move to City Hall after Bohon refused to let him use his office chair. CP at 140.

On December 7, 2005, Mayor Herb Kuhnly directed Bohon in writing to move his office by December 12 or face disciplinary action. Mayor Kuhnly indicated that the City would provide assistance if Bohon had any physical limitations. Again, Bohon refused.

On the day Bohon was required to report to his new office, he called in sick and failed to appear for scheduled building inspections. He later requested that Hansen sign several leave forms and submitted a handwritten memorandum explaining his vacation request.

On December 13, Bohon wrote another letter to Hansen and Mayor White. White still had not assumed office. Bohon alleged that he was "seeking protection against retaliation for reporting improper governmental action." CP at 145. He continued, "Stephanie, you are aware of my age. It is important that you, as an involved party, ensure that Mayor Kuhnly and Bill Beckman are aware of it. To terminate a person of my age is the severest act an employer can do to an employee. If the City of Stanwood proceeds to terminate my employment I will be fully justified in seeking the severest of penalties to be assessed against all relevant parties." CP at 147. Bohon concluded that for "the City to disturb or relocate my office during the time I am away and/or to terminate my employment given the existing circumstances will be further proof of illegal, pretextual acts done in BAD FAITH." CP at 148.

On December 20, 2005, Hansen recommended the Mayor terminate Bohon's employment. Hansen cited violations of the personnel policy manual as grounds for the disciplinary action, including:

> 9.1.6 Loitering after completing day's work, which results in the disruption of the City's business or the work efforts of other employees.
> 9.1.10 Making malicious, false, or derogatory statements that are intended or could reasonably be expected to damage the integrity or reputation of the city or our employees, on or off premises.
> 9.1.11 Insubordination, including a refusal or failure to perform assigned work.

CP at 161. Hansen stated that "[m]ost recently [Bohon] has refused to relocate his work space to City Hall per both my and the Mayor's direct orders." CP at 161.

On January 9, 2006, Mayor White, now in office, presided over Bohon's pre-termination hearing. At the hearing, Bohon focused on his disagreement with the City's hiring decisions over the years. Specifically, his concerns were based on his belief that Anderson and Beckman were not qualified for their jobs. But Bohon admitted that he refused to move his work space to City Hall because he believed his current space was more efficient.

Mayor White asked if Bohon would also refuse her order to move his office. According to Mayor White, Bohon stated that "he would continue to resist any directive to move and work at City Hall, even if it came from me, the current Mayor of the City." CP at 349. In his later deposition, Bohon similarly recalled the interaction:

> Somebody in there asked me, "Who do you think has the authority to"— I'm paraphrasing it now. I can't—I'm not saying this is verbatim what I said or what they said, but somebody asked me who I thought had the authority to tell me to move my office, and I believe I pointed to her, Dianne White, and said, "Well, I believe she does," or whatever. But they don't have my opinion of—this wasn't on the record then—but my opinion is she did not have the authority at that time. None of them had the

-4-

authority because they had abused their oath of office in a felony situation and they had forfeited their right."

CP at 108.

On January 13, 2006, Mayor White notified Bohon that the City was terminating his employment. Mayor White explained that each of the reasons cited in Hansen's letter could serve as a basis for termination. But she identified Bohon's refusal to move his office as the critical factor:

> While any one of the reasons cited for your termination standing alone is a sufficient basis to take this action, the fact that you were repeatedly given a clear directive to move your office and yet willfully refused to do so and even continued to resist that directive during the pre-termination hearing, convinces me that your continued employment is not in the city's best interest.

CP at 164.

Bohon was 72 at the time he was fired. The City hired Jeff Foss, 56, to replace him.

In 2007, Bohon, acting on his own behalf, sued the City in federal district court. Bohon voluntarily dismissed his claims without prejudice.

In 2009, Bohon, refiled his claim in Snohomish County Superior Court. His complaint alleged age discrimination, wrongful discharge, disparate treatment, unlawful harassment, willful withholding of wages, negligent and intentional infliction of emotional distress, and breach of contract.

In 2010 and 2013, the court ordered Bohon to show cause as to why his case should not be dismissed for failure to prosecute. In each case, Bohon retained attorneys to argue against dismissal.

The parties eventually set a trial date in December 2013, but this date was continued to March 2014 due to scheduling problems. Bohon then asked for additional time to prepare and the parties jointly requested a continuance. The court set the new trial date for February 2, 2015.

Over the following year, the City attempted to clarify whether Bohon had retained counsel, reminded him several times of the upcoming trial, and informed him it intended to move for summary judgment. For instance, on October 7, 2014, the City wrote:

> As I have indicated for some time now, the City plans to file a motion for summary judgment in this matter. Enclosed please find a Note for Motion setting the hearing on the motion for Tuesday, November 25, 2014 in Snohomish County Superior Court. I am sending this to you nearly two months in advance of the hearing to give you plenty of time to plan for it. The City will file its motion later this month in accordance with the civil rules.

CP at 300-01.

Due to scheduling conflicts, the City later notified Bohon that it was striking the November motion and would re-note the motion before trial in February.

On December 19, 2014, the City filed its motion for summary judgment and scheduled the hearing for January 16, 2015. That day, the City mailed copies of the motion to Bohon's Camano Island address. United States Postal Service tracking information indicates that the package was left on Bohon's front porch on December 20, 2014.

The City also e-mailed Bohon the summary judgment materials at the address he had used to correspond with the City throughout the litigation.

In addition, the City attempted to personally serve Bohon by legal messenger at his Camano Island home. The messenger was unable to locate Bohon at home and made additional unsuccessful service attempts on December 20, 21, 22, and 26.

On January 15, Bohon called the court to request a continuance due to illness. The court continued the hearing to February 5, 2015.

On January 26, the City wrote Bohon to advise him of the continuances and stated that "[y]ou already have copies of the City's Motion for Summary Judgment and related pleadings, which were served on you on December 19, 2014." CP at 480. Bohon did not respond.

On January 27, Bohon contacted the City's attorney to confirm that the hearing would proceed on February 5.

On February 5, Bohon claims to have appeared at the hearing with a box of documents he believes would have defeated summary judgment. The documents were never filed. The court denied Bohon's motion to continue the matter and granted summary judgment for the City.

Bohon appeals.

## ANALYSIS

### Timeliness of Service

Bohon claims he was not timely served with the City's summary judgment materials before the hearing. The City argues that Bohon waived this issue by not raising it below and, even considering the claim, service was proper. We agree with the City.

It is undisputed that Bohon did not raise the sufficiency of service below, and he makes no argument as to why he should be entitled to raise the issue for the first time

on appeal. Thus, we need not consider it here. See RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995) ("As a general rule, appellate courts will not consider issues raised for the first time on appeal.").

Even so, however, the record is clear that Bohon was properly served. Under CR 5(b)(2)(A), service by mailing is considered complete three days after being placed in the mail:

> [Service] shall be deemed complete upon the third day following the day upon which they are placed in the mail, unless the third day falls on a Saturday, Sunday or legal holiday, in which event service shall be deemed complete on the first day other than a Saturday, Sunday, or legal holiday, following the third day.

"The motion and any supporting affidavits, memoranda of law, or other documentation shall be filed and served not later than 28 calendar days before the hearing." CR 56(c).

Once mailed, a rebuttable presumption attaches that the document has been received by the addressee in the usual time. Neuson v. Macy's Dep't Stores Inc., 160 Wn. App. 786, 793, 249 P.3d 1054 (2011). To invoke the presumption of receipt under the common law mailbox rule, proof of mailing must be shown. Olson v. The Bon, Inc., 144 Wn. App. 627, 634, 183 P.3d 359 (2008). Proof may include a dated receipt or other evidence of mailing. Olson, 144 Wn. App. at 634.

The record shows that the summary judgement materials were placed in the mail on December 19, 2014, and delivered to Bohon's front porch the following day. Bohon claims the fact that the City's legal messenger service was unable to also deliver the materials—noting there was "[n]o answer at door, no noise inside, no movement inside and no lights"—rebuts the presumption that he received the mailing. CP at 36. It does

not. The fact that Bohon did not respond to a legal messenger attempting personal service does not prove he did not receive his mail.[2]

Bohon argues that even assuming delivery under CR 5(b)(2), the presumed delivery date would be December 22, less than the required notice of 28 days. But Bohon calculates the notice based on the original January 16 hearing date. In fact, the hearing was not held until February 5. Calculation of CR 56 notice applies to the date on which the hearing actually occurred. Cole v. Red Lion, 92 Wn. App. 743, 749, 969 P.2d 481 (1998). Indeed, the summary judgment materials were served on Bohon more than 28 days before the summary judgment hearing.

### Failure to Consider Burnet[3] Factors

Bohon next contends that the trial court failed to consider the Burnet factors before rejecting his summary judgment materials. He states he "asked the trial court to accept that evidence or in the alternative to accept it and grant a continuance to allow such materials to have been deemed timely filed." Br. of Appellant at 24.

In general, a trial court's failure to consider the Burnet factors before excluding untimely filed declarations and materials opposing summary judgment is an abuse of discretion. Keck v. Collins, 184 Wn.2d 358, 357 P.3d 1080 (2015). But here, the record

---

[2] Bohon improperly supports his factual arguments on this issue by citation to materials included in the appendix to his briefing. The appendix materials are not in our appellate record and thus not properly before us on appeal. We do not consider them here.

[3] In Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997), our Supreme Court held that the trial court must consider certain factors on the record before imposing one of the "harsher" remedies under the discovery rules, including whether a lesser sanction would suffice.

does not show that Bohon filed or otherwise called the court's attention to the specific materials he now claims were improperly excluded.

An appellant bears the burden of complying with the Rules of Appellate Procedure and perfecting the record on appeal so that we have before us all the evidence necessary to decide an issue. Rhinevault v. Rhinevault, 91 Wn. App. 688, 692, 959 P.2d 687 (1998). We "may decline to reach the merits of an issue if this burden is not met." Rhinevault, 91 Wn. App. at 692. Specifically, RAP 9.12 requires that Bohon provide an official appellate record of all documents called to the attention of the trial court on summary judgment.

Bohon provides no verbatim report of the summary judgment hearing,[4] and nothing in the record indicates Bohon offered summary judgment materials to the trial court. Nor does the record indicate the court excluded documents without consideration of the Burnet factors. The record reflects only that a summary judgment hearing was held on February 5, the court granted summary judgment for the City, and denied Bohon's motion for a continuance. We conclude that the record does not support Bohon's claim.

In regard to Bohon's motion for a continuance, the minute entry for the summary judgment hearing states only that "[p]laintiff's motion for continuance: denied. The court finds this motion was not timely noted on the calendar." CP at 474. We review the denial of a motion for a continuance for a manifest abuse of discretion. In re Dependency of V.R.R., 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006). On this record,

---

[4] If no verbatim report of proceedings was available, Bohon was authorized to file a narrative report of proceedings under RAP 9.3.

Bohon does not establish that the court abused its discretion by denying Bohon's motion for his failure to timely note the motion.

Summary Judgment

Bohon contends that considering all facts and inferences in a light most favorable to him, summary judgment was improper. We disagree.

We review summary judgment orders de novo, considering the evidence and all reasonable inferences in the light most favorable to the nonmoving party, in this case Bohon. Keck, 184 Wn.2d at 370. "Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law." Keck, 184 Wn.2d at 370.

At the outset, Bohon contends that the trial court improperly relied on two unsigned declarations submitted by the City—one from Mayor Dianne White and another from Bohon's former supervisor, Stephanie Hansen—in support of its motion for summary judgment. Yet Bohon cites no legal authority and provides no meaningful analysis of this issue. We do not consider arguments unsupported by citations to legal authority. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Furthermore, because Bohon failed to object to the affidavits or bring a motion to strike below, he waives any objection to the deficiency in the affidavit on appeal. Podbielancik v. LPP Mortg. Ltd., 191 Wn. App. 662, 666, 362 P.3d 1287 (2015) ("If a party fails to object to an affidavit or bring a motion to strike improper portions of an affidavit, any error is waived.").

Bohon contends that the trial court should have considered his entire deposition rather than the excerpts provided by the City. He argues he "wished to introduce other

portions of his transcript." Br. of Appellant at 31. Again, the record does not support this claim. Under ER 106,

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it."

Likewise, under CR 32(a)(4), a party offering deposition excerpts may be required to introduce other portions of the deposition if they should "in fairness" "be considered with the part introduced." Bohon cites nothing in the record, and our review reveals nothing to suggest he moved under ER 106, CR 32(a)(4), or any other authority to compel introduction of other portions of his deposition testimony. His claim fails.

We turn to the merits of Bohon's claim. Under the Washington Law Against Discrimination, an employer may not take an adverse employment action against an employee who is over the age of 40. Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014); RCW 49.60.180(1). At trial, the plaintiff bears the ultimate burden of showing that the protected characteristic was a significant motivating factor in the employer's decision. Scrivener, 181 Wn.2d at 444. But to overcome summary judgment, the plaintiff need only show the protected characteristic, in this case age, was a substantial motivating factor in the adverse employment decision. Scrivener, 181 Wn.2d at 444.

Where a plaintiff lacks direct evidence, we employ the burden-shifting analysis described in McDonnell Douglass Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this approach, the "plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a presumption of discrimination. Once the plaintiff establishes a prima facie case, the burden of

production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Scrivener, 181 Wn.2d at 446 (citation omitted). If the defendant satisfies this burden, the plaintiff must establish that the employer's claimed nondiscriminatory reason is a pretext. Scrivener, 181 Wn.2d at 446.

To satisfy the pretext prong, the plaintiff must offer sufficient evidence to create a genuine issue of material fact showing either, (1) that the defendant's reason is pretextual, or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer. Scrivener, 181 Wn.2d at 446-47.

To establish a prima facie case for age discrimination sufficient to prevail on summary judgment, Bohon must show he was (1) over 40, (2) discharged, (3) doing satisfactory work, and (4) replaced by a significantly younger person. Becker v. Wash. State Univ., 165 Wn. App. 235, 252, 266 P.3d 893 (2011). The fourth factor merely requires Bohon show he was replaced by someone significantly younger, not necessarily that the replacement was outside the statutorily protected class. Griffith v. Schnitzer Steel Indus., Inc., 128 Wn. App. 438, 446-47, 115 P.3d 1065 (2005).

Bohon's core claim is that he was fired and replaced by younger worker, while other younger workers who he claims committed "criminal and fraudulent acts" were not terminated. See, e.g., Br. of Appellant at 41.

Arguably, Bohon fails to establish a prima facie case because he identifies nothing in the record demonstrating he was performing satisfactory work. See Scrivener v. Clark College, 181 Wn.2d at 444. Without citation to the record, Bohon argues he "received only positive performance evaluations during [his employment]."

Br. of Appellant at 37. He claims it is undisputed "the City did not provide evidence of any previous disciplinary actions against him or any unfavorable evaluations." Br. of Appellant at 37. But it is Bohon's burden to provide at least some evidence to support each element of a prima facie case for age discrimination. On the record before us, he fails to do so.

Even assuming Bohon established a prima facie case for age discrimination, he fails to show the City's non-discriminatory basis for firing him was pretext.

Our review of the record shows that Bohon was fired for insubordination related to his repeated refusal to move his office. Bohon was not fired until he was given a full opportunity to explain his position in a pretermination hearing presided over by the newly elected Mayor Dianne White. Mayor White described how at the meeting Bohon focused on the City's hiring decisions and refused to move his office:

> [Bohon] admitted he refused to move his work space to City Hall as directed by his supervisor (Ms. Hansen) and the Mayor (Herb Kuhnly). He disagreed that moving his desk and work space to City Hall where the rest of his Department was located was warranted by the operational needs or interests of the City.

CP at 348.

Mayor White described how Bohon refused even her request to move his office:

> I asked Mr. Bohon if he would still refuse to move his office to City Hall even if I directed him as the new Mayor. He said he would not move and would continue to resist any directive to move and work at City Hall, even if it came from me, the current Mayor of the City.

CP at 348-49.

Mayor White's letter terminating Bohon relied on his refusal to follow several requests from his supervisor, as well as herself, to move his office:

> While any one of the reasons cited for your termination standing alone is a sufficient basis to take this action, the fact that you were repeatedly given a clear directive to move your office and yet willfully refused to do so and even continued to resist that directive during the pre-termination hearing, convinces me that your continued employment is not in the city's best interest.

CP at 164.

Bohon does not dispute these facts. Indeed, Bohon stated in his deposition that, "[y]es, I refused to move my office." CP at 104. Bohon explained he felt he should not be required to move his office because, "my record shows the building department," where he was located, was in his opinion the "most efficient" location. CP at 93. Later, Bohon stated "I could have moved my office but they'd have fired me down the road sooner or later." CP at 96.

To prevail on summary judgment, Bohon must show that age discrimination was a substantial motivating factor in the City's decision to fire him or that its nondiscriminatory reason—his failure to move his office—is pretextual. At best, he identifies the fact that he was replaced by an employee who was 56 when hired. But beyond this, Bohon identifies no remark or actions in the record that would give rise to an inference that age factored into the City's decision. Instead, Bohon acknowledges he refused to follow concrete and specific directives from his supervisor and the Mayor to move his office. He also admitted that Mayor White had no reason to be biased against him. He persisted in doing so even at his pretermination hearing before Mayor White.

Nor are we persuaded by Bohon's analogy to Rice v. Offshore Systems, Inc., 167 Wn. App. 77, 272 P.3d 865 (2012). In that age discrimination case, the plaintiff identified numerous age related remarks by his supervisor leading up to his termination.

-15-

The employer also gave inconsistent reasons justifying the termination and the plaintiff disputed the factual account given by the employer. None of these circumstances are present here. Bohon's claim for age discrimination fails.

As to Bohon's remaining claims, he simply argues "[t]he City devoted little attention to the breach of contract and emotional distress claims in its motion, focusing instead on the age discrimination claims. The Court should not have granted summary judgment, as the trial court did, on all of Mr. Bohon's claims." Br. of Appellant at 41. Bohon cites no authority in support of this argument. Nor does he explain how the City's briefing or argument below relieves him of his obligation support his appeal with argument or citation to authority. We do not consider conclusory arguments unsupported by analysis or legal authority. RAP 10.3(a)(6); Cowiche Canyon, 118 Wn.2d at 809.

Attorney Fees

Bohon requests attorney fees as a prevailing party. Because he has not prevailed, we deny his request.

CONCLUSION

For the reasons discussed above, we affirm the trial court's summary judgment dismissal of Bohon's claims.

WE CONCUR:

-16-